UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **PAUL SHOECRAFT, *et. al.*,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. V-03-85** |
| | § | |
| **UNIVERSITY OF HOUSTON-VICTORIA, UNIVERSITY OF HOUSTON SYSTEM, *et al.*,** | § | |
| | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendants' Motion for Summary Judgment (Dkt. #52). The Court, after reviewing the motion, the responses of the parties and the relevant law, is of the opinion that the motion should be GRANTED.

**Factual and Procedural Background**

This dispute originally arose out of a conflict between the University of Houston-Victoria ("UHV") and Dr. Roy Foley, who Plaintiffs believe was removed as a Chair of the Division of Education for racially motivated reasons. Dr. Foley filed an Equal Opportunity Employment Commission ("EEOC") complaint and ultimately a lawsuit against UHV and the University of Houston System ("UHS") and several of its employees alleging state and federal causes of action. Paul Shoecraft submitted a written statement to UHV in 1994 in support of Dr. Foley's allegations. In 1999, Paul Shoecraft submitted an affidavit in connection with Dr. Foley's lawsuit. Paul and Lynne Shoecraft ("Plaintiffs") believe that the Defendants retaliated against them as a result of Paul Shoecraft's involvement in the Foley dispute. The following events are at the center of this claim.

Paul Shoecraft began working for UHS as an associate professor in 1986 and was on the

1

faculty at UHV from 1986 until 1998. Lynne Shoecraft began working at UHV as an adjunct professor in the College of Education in 1987 and became a full-time lecturer in 1991. At some time either prior to or during their time at UHV, Plaintiffs developed a math education program they called MOVE IT Math ("MIM"). MIM was funded through special line item legislative requests as part of UHS's commitment to the Public School Partnership Program. In 1998, UHV made the determination that it was no longer going to request state funding for MIM. Plaintiffs, with the approval of UHV and University of Houston–Houston Campus ("UH"), agreed to continue MIM in Houston. Consequently, Plaintiffs left their teaching positions at UHV and, on September 1, 1998, Paul Shoecraft was hired by UH as a research professor in the College of Education to work with the MIM program under the supervision of the Dean of the College of Education. Lynne Shoecraft went to UH as a staff member. Upon transferring to UH, Paul Shoecraft was notified by Dr. Don Smith that he would retain his tenure at UHV until August 31, 2001, at which time he either needed to return to UHV or submit a request for an extension of time. Defendants contend, and Plaintiffs do not dispute, that Paul Shoecraft did not elect to return to UHV and made no arrangements to retain his tenure there. As a result, Paul Shoecraft lost his tenure at UHV on August 31, 2001.

After five years of funding MIM, the UHS Legislative Appropriation Request that was submitted in May 2003 to the Texas Legislature did not include MIM in its request for funding. Funding for MIM was provided through the 2002-2003 fiscal year. As a result of the decision not to continue to seek special item funding for MIM, Paul Shoecraft's position as Research Professor in the College of Education was nonrenewed.

After being advised of the nonrenewal decision, Paul Shoecraft wrote a letter to Dr. Robert Wimpelberg, Dean of the UH College of Education, raising the allegations that ultimately gave rise

2

to this lawsuit. On November 14, 2002, Paul Shoecraft filed a complaint with the EEOC alleging that his termination was in retaliation for his support of Dr. Roy Foley in 1999.

Also as a result of the termination of the MIM project, Lynne Shoecraft's position was reduced in force ("RIF") and she subsequently initiated UHS's Grievance Procedures. On October 23, 2003, a UHS Hearing Panel considered Lynne Shoecraft's appeal and concluded that the RIF was proper. On February 10, 2004, Lynne Shoecraft filed a charge of discrimination with the EEOC alleging that her position was terminated as a result of Paul Shoecraft's involvement with the Foley dispute. Lynne Shoecraft received a Dismissal and Notice of Rights from the EEOC on September 22, 2004. Plaintiffs also allege that immediately before Lynne Shoecraft's position was RIF'd she communicated with state officials about the legality of the funding method applied to MIM.

Paul Shoecraft filed his original complaint in August 2003 and amended that complaint to add Lynne Shoecraft as a Plaintiff in February 2004. Plaintiffs' second amended complaint (Dkt. #32) names as defendants UH, UHV, UHS, and Project GRAD, and Jay Gogue ("Gogue"), Robert K. Wimpelberg ("Wimpelberg"), and Ed Hugetz ("Hugetz"), both in their official and individual capacities. The Court granted the Parties Joint Motion to Dismiss Project GRAD (Dkt. #75). The remaining Defendants filed the motion for summary judgment presently before the Court.

## Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating

3

by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations," or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

**Analysis**

**1.     Federal Claims**

*A.     Title VII Retaliation*

In order to prove a retaliation claim under Title VII, a plaintiff must establish: "(1) the employee has engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and

the adverse employment action." *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999). "An employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Eugene v. Rumsfeld*, 168 F. Supp.2d 655, 681 (S.D. Tex. 2001) (quoting *Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996)); 42 U.S.C. § 2000e-3(a). Plaintiffs contend that Paul Shoecraft's activities in support of Dr. Roy Foley in 1994 and 1999 constitute protected activity and that Lynne Shoecraft was also implicated by these activities by virtue of her marriage to Paul Shoecraft. Defendants do not dispute that Paul Shoecraft's actions in support of Roy Foley were protected activity. However, Defendants argue that Lynne Shoecraft cannot assert a Title VII retaliation claim based on the protected activity of her husband. The plain text of Title VII's anti-retaliation provision prohibits only retaliation against the individual who engaged in protected activity, not third parties. Civil Rights Act of 1964, § 704(a), as amended, 42 U.S.C. § 2000e-3(a).[1] Although it can posit certain situations where a third party's support of an employee directly engaged in protected activity might be so overt and obvious as to create standing

---

[1] 42 U.S.C. § 2000e-3(a):
(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

5

under Title VII for that third party, the Court finds that the mere existence of a marital relationship between the employee engaged in protected activity and his/her spouse is not a sufficient connection to impute protected activity to that spouse. See e.g., *U.S.E.E.O.C. v. Bojangles Restaurants, Inc.*, 284 Fed. Supp.2d 320, 330 (M.D.N.C. 2003); *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 241 Fed. Supp.2d 1123, 1142 (D. Kan. 2002). Therefore, Lynne Shoecraft has no standing to assert a Title VII retaliation claim predicated upon the protected activity of her husband.

Plaintiffs also contend that Lynne Shoecraft engaged in protected activity when she allegedly spoke to officials in the State Comptroller's Office and the Attorney General's Office about the legality of the funding mechanism applied to MIM.[2] However, Plaintiffs provide no evidence that Defendants were aware of or should have been aware of Lynne Shoecraft's alleged communications. Without any such evidence, Plaintiffs cannot establish a causal connection between Lynne Shoecraft's communications to the State Comptroller's Office or the Attorney General's Office and her termination necessary to maintain a claim for Title VII retaliation.[3] Consequently, Lynne Shoecraft cannot establish a claim for retaliation under Title VII and Defendants' motion should be granted as to those claims.

Defendants do not dispute that Paul Shoecraft engaged in protected activity when he wrote two affidavits in support of Roy Foley in 1994 and 1999, and that he suffered an adverse "ultimate

---

[2] Dkt. #63, p. 24.

[3] Moreover, Plaintiffs have failed to present any competent summary judgment evidence that Lynne Shoecraft even spoke to anyone at the State Comptroller's Office or the Attorney General's Office. In Paragraphs 108 and 109 of their brief, Plaintiffs reference Exhibit 51 as evidence of these conversations. However, Exhibit 51 is a letter from Paul Shoecraft to Robert Wimpelberg regarding Project GRAD. The letter makes no mention of Lynne Shoecraft's alleged communications to state officials.

employment decision"[4] when his position at UH was nonrenewed in 2003. However, Defendants challenge Paul Shoecraft's retaliation claims on the grounds that (1) he cannot sue the individually named University Defendants, (2) his claims are time barred, and (3) he cannot establish an inference of retaliation sufficient to support the causal connection necessary to maintain a Title VII claim.

It is settled law in the Fifth Circuit that employees may not be sued for damages under Title VII in their individual capacities. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999). Although Title VII defines the term employer to include "any agent" of an employer, 42 U.S.C. § 2000e(b), the Fifth Circuit does not interpret the statute as imposing individual liability on employees for such a claim. See *Pfau v. Reed*, 125 F.3d 927, 935-36 (5th Cir. 1997). Furthermore, the Court finds that it would be redundant for Plaintiffs to sue Gogue, Wimpelberg, and Hugetz in their official capacity as University Employees and to sue UHV and UHS, because UHV and UHS would bear responsibility for the liability of the individually named defendants through Title VII's incorporation of the principle of respondeat superior. See *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir.1994). Therefore, the Court finds that Paul Shoecraft cannot maintain a Title VII retaliation claim against Defendants Gogue, Wimpelberg, and Hugetz in their individual or official capacities.

Defendants also contend that Paul Shoecraft's Title VII claims are timed barred. Under 42 U.S.C. § 2000e-5(e)(1), a Title VII plaintiff must file a charge of discrimination with the EEOC no

---

[4] In the Fifth Circuit, only an "ultimate employment decision" by an employer can form the basis for liability for retaliation under Title VII. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir. 1997). Specifically, the Fifth Circuit has held that activities that do *not* constitute an "ultimate employment decision" include reprimands, *Green v. Administrators of Tulane Educational Fund*, 284 F.3d 642, 657-58 (5th Cir. 2002), rude treatment, *Cardiothoratic Surgery Assocs. of N. Tex.*, 139 F.3d 532, 540 (5th Cir. 1997), criticism of work and conduct, *Messer v. Meno*, 130 F.3d 130, 140 (5th Cir. 1997), threats of potential dismissal, verbal reprimands, or low evaluations, *Mattern*, 104 F.3d at 708 (5th Cir. 1997).

more than three hundred days after learning of an adverse employment decision. Failure to timely file an EEOC charge procedurally bars a Title VII action in federal court. *Love v. Pullman Co.*, 404 U.S. 522, 523 (1972); *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 711 (5th Cir.1994). Paul Shoecraft alleges that the nonrenewal of his position in 2003 is the adverse employment action giving rise to this lawsuit. Paul Shoecraft filed his EEOC Charge on October 28, 2002, less than a month after Robert Wimpelberg advised him that, effective August 31, 2003, his "position as Research Professor in the College of Education [would] terminate."[5] Defendants concede that "Paul Shoecraft alleged [in his EEOC Charge] that his *termination* was in retaliation for his support of Roy Foley . . . ." (emphasis added). Therefore, the Court finds that Paul Shoecraft's EEOC Charge was timely filed and properly addressed the facts giving rise to his Title VII claims.

Defendants also contend that Paul Shoecraft cannot establish a prima facie case for retaliation under Title VII. Specifically, Defendants argue that "Plaintiffs cannot establish any causal connection between any alleged protected activity in the 90s, and their loss of employment in 2003."[6] However, Defendants do not dispute that they were aware of Paul Shoecraft's protected activity at the time the decision was made to nonrenew his position. This knowledge is sufficient to satisfy the causation prong of a prima facie case for purposes of surviving a motion for summary judgment. See *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 320 (5th Cir. 2004) (citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir.2003)). However, Plaintiffs have failed to establish that UHV had any role in the decision to nonrenew Paul Shoecraft's position at UH. All the parties implicated by the Plaintiffs' evidence were at UH and/or UHS. Therefore, the Court

---

[5] Dkt. #63, Exhibit 55.

[6] Dkt. #52, p.20.

8

finds that Plaintiffs have failed to establish a prima facie case for retaliation under Title VII against UHV. Plaintiffs have, however, established a sufficient prima facie case as to UHS for purposes of surviving summary judgment.

Once a plaintiff succeeds in making a prima facie case, the burden then shifts to the defendant to proffer a legitimate rationale for the underlying employment action. *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir.2001). If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was either a pretext for retaliation, *Id.*(citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)), or only one of multiple motives. *Rachid v. Jack-in-the-Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004). Defendants contend that Paul Shoecraft's position was nonrenewed because UH/UHS made the legitimate business decision to cease allocating limited funds to the MIM project in order to fund other programs. In response to Defendants proffered legitimate business reason, Plaintiffs offer nothing more than the obtuse, self-serving statement that "[a] causal connection is demonstrated by the fact that various acts of retaliation as alleged above."[7] Plaintiffs make no allegation that Defendants' proffered reason is pretextual or that Defendants' motives were mixed. Plaintiffs offer no evidence that there was anything out of the ordinary about the decision not to continue funding for MIM. Moreover, even if the Court could glean such evidence from Plaintiffs' brief, the Fifth Circuit has made clear that "evidence of departures from prior procedures does not suffice to defeat summary judgment in a discrimination case unless there is some evidence that the departures were meant to be discriminatory." *Scales v. Slater*, 181 F.3d 703, 711 (5th Cir. 1999). Nowehere in the 82 Exhibits attached to Plaintiffs' brief does nay Defendant mention Roy Foley or any association between Paul Shoecraft and Roy Foley. There is no memo, email, letter, or note that

---

[7] Dkt. #63, p.29.

could possibly be interpreted as alluding to Paul Shoecraft's support of Roy Foley. What is most telling is that Paul Shoecraft himself never mentions Roy Foley or his involvement with Dr. Foley in any communication with UHS and/or UH officials or personnel until after Robert Wimpelberg informed him that his Research Professor position would be terminated with the MIM program.

Furthermore, the lapse in time between Paul Shoecraft's protected activity (his 1999 affidavit in support of Roy Foley) and the adverse employment action giving rise to this suit (October 2002 letter announcing the termination of his position in 2003) falls far short of establishing a presumption of causation. See e.g., *Foster v. Solvay Pharmaceuticals, Inc.*, 2005 WL 3505052 (5th Cir. Dec. 23, 2005) (holding that defendant employer's proffered legitimate business reason for firing plaintiff was not pretext for retaliation where firing occurred six months after plaintiff's protected activity.); *Septimus v. University of Houston*, 399 F.3d 601 (5th Cir. 2005) (holding that plaintiff failed to raise a material fact issue regarding defendant's retaliatory motive where her protected activity occurred ten months before defendant denied her an interim promotion). Plaintiffs' offer no other evidence linking Paul Shoecraft's protected activity with the University's decision to terminate his position. Therefore, the Court finds that Plaintiffs have failed to carry their burden on summary judgment and produce a material fact issue calling into question Defendants' proffered legitimate business reasons for nonrenewing Paul Shoecraft's position at UH in 2003.

B.      *§§ 1983 and 1981 Claims*

42 U.S.C. § 1981 provides that, "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. Claims of employment discrimination brought under § 1981 are subject to the same evidentiary framework as a Title VII claim. *Harrington v.*

*Harris*, 118 F.3d 359, 367 (5th Cir. 1997).  Because the Court has found that Plaintiffs have not met their summary judgment burden as to their Title VII claims, it follows that they cannot maintain claims under § 1981.

To establish a 42 U.S.C. § 1983 claim for retaliation for the exercise of free speech protected by the First Amendment, Plaintiffs have the burden of showing: (1) that they suffered adverse employment actions; (2) as a result of speech involving a matter of public concern; (3) that their interest in commenting on the matter of public concern outweighed the Defendants' interest in promoting efficiency; and (4) that the adverse employment actions were motivated by the protected speech. *Foley v. Univ. of Houston, et al.*, 355 F.3d 333, 341 (5th Cir. 2003) (citing *Harris v. Victoria Ind. School Dist.*, 168 F.3d 216, 220 (5th Cir. 1999); see also *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997).  Defendants argue that they are immune from suit under § 1983 by virtue of Eleventh Amendment sovereign immunity.  The Eleventh Amendment generally prohibits federal courts from exercising jurisdiction over suits against non-consenting states.  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996).[8]  Suits against state officials in their official capacity are considered to be suits against the individual's office, and so are generally barred under the Eleventh Amendment as suits against the state itself.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989).  Defendants contend that UH, UHS, and UHV, as state agencies, see TEX. ED. CODE § 101.01 *et seq.*, and Gogue, Wimpelberg, and Hugetz in their official capacities are therefore immune from suit under § 1983.  The Court agrees that UH, UHS, and UHV are immune from suit as state agencies.  See *Briggs v. Mississippi*, 331 F.3d 449, 503 (5th Cir. 2003).  However, claims

---

[8] See *Howlett by and through Howlett v. Rose*, 496 U.S. 356, 376 (1990) (holding that "[s]ince [the Supreme] Court has construed the word 'person' in § 1983 to exclude States, neither a federal court nor a state court may entertain a § 1983 action against such a defendant.").

11

for prospective injunctive relief brought against state officials in their official capacity are not suits against the state. *Will*, 491 U.S. at 71, n.10; *Ex parte Young*, 209 U.S. 123 (1908); *AT&T Communications v. BellSouth Telecommunications, Inc.*, 238 F.3d 636, 643 (5th Cir. 2001) (holding that despite Eleventh Amendment immunity, federal suits may proceed against state officials for prospective injunctive relief to end continuing violation of federal law under doctrine of *Ex parte Young*.). Because Plaintiffs seek reinstatement, there is a reasonable likelihood that they would be subjected to the alleged constitutional injuries in the future and therefore the injunctive relief sought is proper. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047, n.3 (5th Cir. 1996). Therefore, the Court finds that Eleventh Amendment immunity does not extend to Gogue, Wimpelberg, and Hugetz in their official capacities.

However, the Court finds that Lynne Shoecraft cannot maintain a § 1983 claim against Gogue, Wimpelberg, and Hugetz because, as was the case with her Title VII claims, Plaintiffs have failed to present any evidence that Lynne Shoecraft's alleged speech to the State Comptroller's Office or the Attorney General's Office were motivating factors in the University's decision to RIF her position.[9] Plaintiffs similarly fail to provide sufficient summary judgment evidence of causation for Paul Shoecraft's § 1983 claim. Plaintiffs allege no facts that tend to suggest that Paul Shoecraft's speech in 1994 and 1999 precipitated his termination in 2003. Plaintiffs present no evidence that Gogue, Wimpelberg, or Hugetz ever discussed Paul Shoecraft's protected speech with him or amongst themselves. Plaintiffs cannot rely on the alleged changes to the structure, location, and funding of MIM to survive summary judgment without some evidence that these decisions were

---

[9] Furthermore, Plaintiffs fail to disclose the exact contents of Lynne Shoecraft's alleged communications with government officials. Plaintiffs cannot establish a § 1983 claim, based on a violation of Lynne Shoecraft's free speech rights, absent identification of exactly what speech was involved or a showing that such speech primarily addressed a matter of public concern. See *Foley v. Univ. of Houston*, 355 F.3d 333, 342 (5th cir. 2003).

tied to Paul Shoecraft's protected speech. Although the Court is appropriately reluctant to delve too far into the issue of causation, the Fifth Circuit has agreed that "[s]ummary judgment, to be sure, may be appropriate, even in cases where elusive concepts such as motive or intent are at issue, ... if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139 (5th Cir.1996). Therefore, the Court finds that Plaintiffs' summary judgment evidence cannot support their claims for *Ex Parte Young* injunctive relief. See *Gregory v. Texas Youth Com'n*, 111 Fed. Appx. 719, 721-22 (5th Cir. 2004).[10]

### 2. State Law Claims

A district court may decline to exercise supplemental jurisdiction if it has dismissed all the claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3).[11] Although the general rule in the Fifth Circuit "is to dismiss state claims when the federal claims to which they are pendent are dismissed[,]" *Parker & Parsley Petroleum Co. v. Dresser Ind.*, 972 F.2d 580, 585 (5th Cir.1992) (*citing Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir.1989)); see also *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir. 2004), the Supreme Court has counseled that district court's should examine factors such as economy, convenience, fairness, federalism, and comity in determining whether jurisdiction should be exercised. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Based on the considerations that the Court has had substantial involvement with this case for several years and there is an absence of complex or as yet untested issues of state law, the Court finds that

---

[10] Because the Court finds that Plaintiffs cannot survive summary judgment on the merits of their § 1983 claims, there is no need to further address Defendants' contention that Gogue, Wimpelberg, and Hugetz in their individual capacities are entitled to qualified immunity.

[11] Section 1367(c) states that "district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction . . . ."

13

it would be in the best interests of the Parties and justice for the Court to exercise supplemental jurisdiction over the remaining state claims. Consequently, the Court has made a substantive inquiry into each state law cause of action.

Defendants generally object to Plaintiffs' state law causes of action on the grounds that the institutional Defendants and individual Defendants in their official capacities are immune from suit by virtue of the Eleventh Amendment and the individual Defendants in their individual capacities are immunized from suit by official immunity. As discussed in the context of Plaintiffs' § 1983 claims, the agencies of an unconsenting state are immune from suit by private citizens. See *Penhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101 (1984) (holding that "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Plaintiffs do not dispute that UHS and UHV are agencies of the state. Therefore, as state agencies, UHS and UHV are immunized from private suit by the Eleventh Amendment. Consequently, Plaintiffs cannot maintain their state causes of action against those institutional Defendants.

Furthermore, the Eleventh Amendment bars a suit in federal court against state officials when "the state is the real, substantial party in interest." *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945). The general rule to determine whether the state is the real party in interest is to consider the relief sought and evaluate whether a judgment for the plaintiff would in effect restrain the state from acting or compel the state to act. See *Penhurst*, 465 U.S. at 102. Plaintiffs seek "declaratory and injunctive relief" in connection with their state law claims.[12] The practical effect of this relief would be to compel the University to make certain hiring and budgetary decisions to comply with a court order. Therefore, the Court finds that the state is the real party in

---

[12] Dkt. #6, pp. 20 and 22.

14

interest and Eleventh Amendment sovereign immunity bars Plaintiffs' state law causes of action against the individually named Defendants in their official capacities.[13]

The Eleventh Amendment does not bar state law actions against state officials in their individual capacity. *Scheuer v. Rhodes*, 416 U.S. 232, 237-38 (1974). However, public officials and employees sued in their individual capacities for tortious acts committed within the course and scope of their duties are entitled to official immunity if (1) the suit arises from the performance of their discretionary duties, (2) that discretion was exercised in good faith, and (3) within the scope of their authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). Defendants Gogue, Wimpelberg, and Hugetz were all employed by UHS/UH at the time the events giving rise to Plaintiffs' state causes of action transpired. Gogue was the Chancellor of UHS. Hugetz was the Assistant Vice Chancellor of UHS and the Vice President of UH. Wimpelberg was the Dean of the College of Education at UH. Plaintiffs allege generally that every action taken by each of these Defendants documented in Plaintiffs' brief and exhibits gives rise to Plaintiffs' state law causes of action for civil conspiracy, tortious interference with contract, and violation of the Texas Whistle Blower Act. The Court has carefully reviewed Plaintiffs' portrayal of events and the communications documented in Plaintiffs' exhibits and determined that any action by the individually named Defendants potentially at bar was performed in the course of their duties as UHS/UH officials. The decision to discontinue funding to the MIM program and terminate the Shoecrafts' positions were budgetary and personnel decisions committed to the sound discretion of those University officials. Plaintiffs have not suggested that Defendants' had any duty to continue

---

[13] The Court notes that the exception to sovereign immunity set forth in *Ex Parte Young*, 209 U.S. 123 (1908), permitting federal law claims for prospective, injunctive relief against state officials named in their official capacities does not apply to state law claims. *Antonelli v. New Jersey*, 310 F. Supp.2d 700, 714 (D.N.J. 2004).

funding for MIM or to preserve their employment. In fact, Plaintiffs do not dispute that they were "at-will" employees of the University at the time of their discharge. Plaintiffs' own evidence confirms that Paul Shoecraft was aware that his tenure would not be preserved beyond August 31, 2001 without some affirmative action on his part, and thus establishes that the University had no legal duty to preserve his tenure after that date.[14] Plaintiffs' evidence simply illustrates years of budgetary disagreement between numerous UHS, UH, and UHV officials and the Shoecrafts extending from before Paul Shoecraft's protected activity up until the time funding for MIM was discontinued.

Whether the individually named Defendants acted in good faith is a test of objective reasonableness. Each Defendant has acted in good faith if a reasonably prudent person of their office with the University could have, under the same circumstances, believed that their actions were correct. *City of Lancaster*, 883 S.W.2d at 656. However, the issue of good faith is only relevant where there is some evidence that the defendant officials have somehow acted improperly. The good faith analysis is intended to protect public officials who make good faith missteps in the course of performing their discretionary duties. Here, however, Plaintiffs have presented no evidence to suggest that the individually named Defendants improperly or incorrectly performed their duties. Instead, Plaintiffs pleadings seem to contend that Defendants actions, while proper on their face, where improperly motivated by a desire to punish the Shoecrafts for Paul Shoecraft's support of Dr. Roy Foley. The Court has already found that Plaintiffs' evidence does not establish such a motive. Taking Plaintiffs' evidence as a whole, and in the light most favorable to their pleadings, the Court finds that the relevant actions of the individually named Defendants were within the scope of their discretionary duties as University officials and performed in good faith. Therefore, Plaintiffs' state

---

[14] Dkt. #63, Exhibit 31.

16

causes of action against the individually named Defendants in their individual capacities are barred by official immunity under Texas law.

## Conclusion

For the reasons stated above, the Court finds that Defendants' Motion for Summary Judgment (Dkt #52) should be GRANTED.

It is so ORDERED.

Signed this 28th day of March, 2006.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE